## THE STATE *vs.* ALEXANDER PORTER.

Proof of guilty knowledge in an election officer.

The defendant was indicted for refusing a legal vote, the vote of Charles Fawcett, at the general election in 1844, in Wilmington; he being the inspector of the election.

The court charged as in M'Donald's case, ante 555.

The jury, after being out all night, came into court and proposed the following questions, in writing :—

Is it incumbent on the prosecution to adduce *positive evidence* that the defendant acted from a corrupt motive? or what precisely is the nature of the evidence that the prosecution must bring to prove the corrupt motive?

It also appears that some of the jurors argue, and cannot come to a verdict, from the fact that they see proper to connect with the defendant, the judges' concurrence, or a majority of them, with the defendant, in his rejection of the vote; what influence on the minds of the jury ought such concurrence to have?

Also, has it been proved before the court and jury, that J. W. Duncan concurred in the rejection of said vote.

*By the Court.*—The matters referred to, in the note from the jury, are rather within their own province to decide upon, than that of the court; but we may, perhaps, properly make some suggestions in reply to your communication.

What we understand the jury to mean by positive proof of corruption, is not possible in a direct sense, for the motives of a man's conduct, and the impulses of his heart, cannot be the subject of direct positive proof; but there must be proof so clear, or positive, as to produce conviction, of acts, or declarations, or circumstances, from which the jury can, and indeed, have to, draw the inference of corruption. It is difficult to define corruption; but we may say, that it is the wilfully and corruptly doing an act, or omitting a duty, which a person acting in a public capacity, *knows* it to be his duty to do, or omit; in disregard of his official duty, and the obligations of his oath.

As to the connection of other persons in such violations of duty, where the corruption is proved, their participation can be no shelter or excuse for the defendant; but their consent to the act may be regarded in considering the probability of the defendant's corruption.

As to the fact whether all the judges concurred in rejecting this vote; it is for the jury, not for us, to say, whether it was proved. Our note of Mr. Cleland's testimony, is, that he said *we*, meaning himself and Mr. Duncan, the judges of the election, were satisfied to reject the vote.

The jury came in again at about 8 o'clock, P. M., and stated that they had not agreed, and probably never would agree, they having been out about twenty-seven hours, and no nearer together than when they first retired. Whereupon, a juror was withdrawn, and they were discharged.

*Bradford*, dep. att'y. gen'l. for the State.

*Rogers, jr.,* for defendant.